AC

FILED

JUL 2 7 2007 rq
JUL 27 2007
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

ROBERT LIEBLANG,

Plaintiff,

v.

CROWN MEDIA HOLDINGS, INC. and WILLIAM J. ALIBER,

Defendants.

No.

07CV4250
JUDGE DARRAH
MAG.JUDGE MASON

**COMPLAINT**

NOW COMES Plaintiff Robert Lieblang ("Lieblang"), by his undersigned attorney, and for his Complaint against Defendants Crown Media Holdings, Inc. ("Crown" and the "Company") and William J. Aliber ("Aliber") state the following:

**The Parties**

1. Plaintiff Robert Lieblang ("Lieblang") is a citizen of the State of Illinois residing at 43 Oxford Drive, Lincolnshire, Illinois.

2. Crown is a corporation organized under the laws of the State of Delaware with its principal place of business located at 12700 Ventura Boulevard, Suite 200, Studio City, California where it is engaged in the business of broadcast media production and other related activities. Crown is and at all times relevant hereto was a publicly-traded subsidiary of The Hallmark Corporation.

3. Upon information and belief, Defendant Aliber is a citizen of the State of Missouri. All times relevant hereto, Aliber was the Executive Vice-President and Chief Financial Officer of Crown and worked for Crown in Kansas City, Missouri.

4. Jurisdiction exits over this matter pursuant to 28 U.S.C. Section 1332(a)(1) because the action is between citizens of different states and the amount in controversy exceeds

the sum of $75,000 exclusive of interest and costs. Jurisdiction also exists over the federal law claims in this matter pursuant to 28 U.S.C. Section 1331 and 1337 and 15 U.S.C. Section 78aa and over the other claims in this matter pursuant to 28 U.S.C. Section 1367(a).

5. Venue is properly laid in this district pursuant to 28 U.S.C. Section 1391(b)(2) and 15 U.S.C. Section 78aa because a substantial part of the events or omissions giving rise to the claims occurred in this district.

**Facts Common to All Counts**

6. On or about August 31 2005, Plaintiff began purchasing shares in Crown, in response to a public announcement by Crown about two weeks earlier, that it was placing itself up for sale. Crown's announcement encouraged broadcast media companies interested to engage in an auction process in 2006.

7. In December 2005, Plaintiff listened to a public telephone conference call initiated by Crown during which Aliber as Executive Vice-President and Chief Financial Officer spoke on Crown's behalf regarding the status of the auction process. During this telephone conference call, Aliber stated the auction process was proceeding satisfactorily.

8. Shortly thereafter, on or about December 14, 2005, Plaintiff viewed an on-line Wall Street Journal article which stated that News Corp. submitted an indication of interest in bidding for Crown but at a price far below what the Company's Board was seeking. The article also opined that two other prospective bidders, Viacom and Time Warner, Inc., were unlikely to pursue a purchase of the Company.

9. Concerned about the apparent disparity between Crown's report through Aliber regarding the auction process and what he read in the Wall Street Journal article, Plaintiff telephoned Crown to inquire whether the information reported in the Wall Street Journal article was accurate. In response to Plaintiff's inquiry, a Crown investor relations representative told

him that the auction was continuing to proceed smoothly as had been reported during the telephone conference call.

10. From time to time thereafter, Plaintiff telephoned Crown for additional information and seeking to speak with Aliber.

11. On March 9, 2006, Plaintiff spoke with Aliber, introducing himself and telling Aliber of his large position in Crown stock. Amongst other things, Plaintiff inquired about the Wall Street Journal article he had seen and asked whether it was accurate. Aliber told Plaintiff that he was familiar with the article and that the article was not accurate. Aliber said words to the effect that, "Those reporters don't know anything. Not only are News Corp., Viacom and Time Warner still interested but we have two hedge funds interested."

12. On March 16, 2006, Robert Routh, a stock analyst for Jeffries, downgraded Crown stock from "Buy" to "Hold." Routh stated he was downgrading the Company's stock because the Company was delaying the release of its earnings and the filing of its Form 10-K and also because there were no buyers for the Company.

13. After reading this news, Plaintiff called Routh who told him that News Corp., Time Warner and Viacom all had pulled out of bidding for the Company.

14. Plaintiff then called and spoke with Aliber and related to him what Plaintiff had read regarding the downgrading and of his conversation with Routh. Plaintiff asked Aliber whether what Routh had told him was true. Aliber assured Plaintiff that Routh was wrong and said that two of the three bidders mentioned by Routh were still in the auction process.

15. During this March 16, 2006 telephone conversation, Plaintiff also asked Aliber about the Company's delay in its release of earnings and 10-K filing. Aliber told Plaintiff not to worry; that the delay had been caused by a minor accounting error due to debt owed by Crown to Hallmark. According to Aliber, notwithstanding the fact that Hallmark was Crown's majority

shareholder, Crown's auditor required five bank letters stating there was no issue regarding the debt and no chance that Hallmark would seize any asset of Crown because of the outstanding debt.

16. On March 20, 2006, Plaintiff spoke with Aliber. During this conversation, Aliber told Plaintiff that Crown was working to obtain the bank signatures needed for filing of the 10-K.

17. On March 21, 2006, Plaintiff spoke with Aliber and asked for a status report on the process of obtaining bank signatures for the 10-K. During this conversation, Aliber told Plaintiff that Crown might release earnings and file its 10-K on March 24, 2006, if it obtained the requisite bank signatures in time. Plaintiff asked Aliber if he had a vested interest in seeing the deal go through. Aliber responded by telling Plaintiff that he had restricted stock units and so it was painful for him to watch the share price drop due to the delay in the release of earnings.

18. On March 22, 2006, Plaintiff spoke with Aliber. During this conversation, Aliber told Plaintiff that Crown needed to obtain one more bank signature from a foreign bank after which Crown could release its earnings report and file its 10-K. Aliber urged Plaintiff to "hang in there" and not sell his stock.

19. On March 23, 2006, Plaintiff spoke with Aliber to inquire when the earnings report would be released. During this conversation, Aliber again urged Plaintiff to "hang in there" and not to sell stock. Aliber told Plaintiff that the Board might accept a lower price because the stock price had dropped. Aliber also stated there were still interested buyers including News Corp., Viacom and Time Warner.

20. On March 29, 2006, Crown released its earnings report and filed its 10-K.

21. On April 4, 2006, Plaintiff spoke with Aliber to inquire about the status of the auction process. During this conversation, Aliber said that one of two things would happen. Either Crown would sell itself to one of the interested buyers which included News Corp.,

Viacom and Time Warner or it would sell its film library to a hedge fund and enter into a partnership with News Corp., Viacom or Time Warner. Aliber stated his belief that in either scenario the stock price would go up. Aliber again urged Plaintiff not to sell his stock.

22. On April 6, 2006, Plaintiff spoke with Aliber to inquire further about the auction process. During this conversation, Aliber stated that the auction process continued to go well and that Crown's Board was scheduled to meet on April 13, 2007 to consider all of the offers. Aliber said that the Board would pick one of the options discussed during his April 4, 2006 telephone conversation with Plaintiff.

23. On April 12, 2006, Plaintiff spoke with Aliber to inquire about the status of the auction process. During this conversation, Aliber told Plaintiff that the Board would probably take a day or two and make its announcement on April 17, 2006.

24. On April 17, 2006, Crown announced that it was terminating the auction because it was unable to locate a buyer. The announcement caused the share price to decline.

25. When Plaintiff learned of the announcement, he spoke with Aliber to ask what had happened. Aliber was very apologetic and, contrary to all of his previous statements to Plaintiff, Aliber told Plaintiff that the Board had not had any interested buyers for the Company.

26. Upon information and belief, in or about September 2006, Aliber was forced to resign his position with Crown, at least in part because of his false and misleading communications with Lieblang about the auction process.

27. Aliber either knew the aforementioned statements he made to Plaintiff regarding the auction process were false or was reckless in his failure to ascertain the truth of his statements.

28. Aliber knew that Plaintiff was maintaining a large position in Crown stock and further knew that if the price of Crown stock fell, prospective buyers would be less interested in

purchasing the Company. Aliber urged Plaintiff to maintain his position in Crown stock knowing that Plaintiff owned a large percentage of the "float" in Crown stock and that a sale of those shares would cause the stock price to drop. At all times, Aliber was acting as an agent and officer of Crown.

29. From August 31, 2005 to April 13, 2006, Plaintiff purchased in his individual account at Ameritrade 417,685 shares of Crown stock at a total purchase price of over $4,000,000. By April 18, 2006, all of these shares were sold through forced sales to meet margin calls. Due to the purchases and subsequent forced sales of Crown stock, Plaintiff suffered a loss in his account of at least $1,939,233.79.

30. Plaintiff also purchased 16,600 shares of Crown stock in his IRA account at overall cost of $102,057. On August 24, 2006, Plaintiff sold the foregoing shares for $65,853.96, suffering a net loss in the IRA account of $36,203.04.

**Count I**

**Violation of Section 10(b) of the Exchange Act**

31. Plaintiff repeats and realleges the contents of paragraphs 1 through 30 of this Complaint as if set forth fully herein.

32. This Count is an action for violation of Section 10(b) of the Securities Exchange Act of 1934, 10 U.S.C. Section 78j(b) and Rule 10b-5 promulgated thereunder by the Securities and Exchange Commission, 17 C.F.R. Section 240.10b-5.

33. As alleged more fully above at paragraphs 11, 14, 15, 18, 19, 21, and 22 of this Complaint, Defendants made false statements to Plaintiff, which they knew to be false or misleading or whose falsity or misleading nature they deliberately disregarded, in that the statements contained misrepresentations and Defendants failed to disclose material facts

necessary in order that the statements, in light of the circumstances under which they were made, would not be misleading.

34. Defendants violated Section 10(b) and Rule 10b-5 in that they:

A. employed devices, schemes and artifices to defraud;

B. made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, were not misleading; or

C. engaged in acts, practices and a course of business that operated as a fraud or deceit upon Plaintiff.

35. Plaintiff justifiably relied on the representations made by Defendants in deciding to purchase 16,600 shares of Crown stock in his IRA account and 24,800 shares of Crown stock for his individual account.

36. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff suffered damages in connection with his purchases of Crown stock for his IRA account and his individual account.

WHEREFORE Plaintiff prays for judgment to be entered in his favor and against Defendants Crown Media Holdings, Inc. and William J. Aliber, jointly and severally, and for the following relief:

A. An award of all compensatory damages suffered by Plaintiff in the amount to be proven at trial, but no less than $398,742.04;

B. An award of costs and expenses necessary and incidental to this action, including but not limited to attorney fees actually and reasonably incurred by Plaintiff in this action; and

C. For any such other and further relief as the Court deems just and equitable.

**Count II**

**Violation of Illinois Consumer Fraud Act**

37. Plaintiff repeats and realleges the contents of paragraphs 1 through 30 of this Complaint as if set forth fully herein.

38. This Count is an action for violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2 ("Illinois Consumer Fraud Act").

39. The Illinois Consumer Fraud Act bars any person from "the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of such material fact ... in the conduct of trade or commerce...." 815 ILCS 505/2.

40. As alleged more fully above at paragraphs 11, 14, 15, 18, 19, 21, and 22 of this Complaint, Defendants engaged in the use of a deception, made material misrepresentations to Plaintiff, and omitted to make material representations, with the intent of inducing Plaintiff to rely to his detriment in: (1) investing monies in Crown; (2) maintaining those investments: and, (3) forbearing from acting to terminate those investments. By these acts and omissions, Defendants violated the Illinois Consumer Fraud Act.

41. Unbeknownst to Plaintiff at the time he made his investments, the representations at paragraphs 11, 14, 15, 18, 19, 21, and 22 of the Complaint regarding the impending sale of the Company was false. The foregoing representations and deceptive practices were made and engaged in by Defendants for the purpose of inducing Plaintiff to rely upon them.

42. As a proximate and direct result of the above-alleged wrongful acts and omissions of Defendants, Plaintiff invested money in Crown and suffered damages as alleged above.

43. Defendants' actions were willful and wanton and justify the imposition of punitive damages.

WHEREFORE Plaintiff prays for judgment to be entered in his favor and against Defendants Crown Media Holdings, Inc. and William J. Aliber, jointly and severally, and for the following relief:

A. An award of all compensatory damages suffered by Plaintiff in the amount to be proven at trial, but no less than $1,975,436.83, plus prejudgment interest;

B. An assessment of punitive damages in the amount of $6,000,000 or such other amount to be determined by the jury;

C. An award of costs and expenses necessary and incidental to this action, including but not limited to attorney fees actually and reasonably incurred by Plaintiff in this action; and

D. For any such other and further relief as the Court deems just and equitable.

**Count III**

**Common Law Fraud**

43. Plaintiff repeats and realleges the contents of paragraphs 1 through 30 of this Complaint as if set forth fully herein.

44. This Count is an action for common law fraud.

45. As alleged more fully above at paragraphs 11, 14, 15, 18, 19, 21, and 22 of this Complaint, Defendants made material misrepresentations to Plaintiff, omitted to make material representations, and employed deceptive devices and practices with the intent of inducing Plaintiff to rely to his detriment and with the actual effect of inducing Plaintiff to rely to his detriment in: (1) investing monies in Crown; (2) maintaining those investments; and (3) forbearing from acting to terminate those investments.

46. Unbeknownst to Plaintiff at the time he made and maintained his investments, the representations at paragraphs 11, 14, 15, 18, 19, 21, and 22 of the Complaint regarding the impending sale of the Company was false and was made by Defendants with actual knowledge or reckless indifference to the falsity of such statements when made. The foregoing representations were made by Defendants for the purpose of inducing Plaintiff to maintain his investments in Crown and/or to make further investments in Crown.

47. At the time of their representations and omissions, Defendants had actual knowledge that their representations were false or acted with reckless indifference to the falsity of their representations. They intended that Plaintiff rely on such representations and omissions and Plaintiff actually and reasonably relied on such representations and omissions to his detriment by both purchasing and continuing to hold shares of Crown stock.

48. As a proximate and direct result of the above-alleged wrongful acts and omissions of Defendants, Plaintiff suffered damages as alleged above.

49. The above actions of Defendants were willful and wanton and justify the imposition of punitive damages.

WHEREFORE Plaintiff prays for judgment to be entered in his favor and against Defendants Crown Media Holdings, Inc. and William J. Aliber, jointly and severally, and for the following relief:

A. An award of all compensatory damages suffered by Plaintiff in the amount to be proven at trial and in excess of $1,975,436.83;

B. An assessment of punitive damages in the amount of $6,000,000 or such other amount to be determined by the jury;

C. An award of costs and expenses necessary and incidental to this action, including but not limited to attorney fees actually and reasonably incurred by Plaintiff in this action; and

D. For any such other and further relief as the Court deems just and equitable.

PLAINTIFF DEMANDS TRIAL BY JURY.

Plaintiff ROBERT LIEBLANG

By: ______________________
One of His Attorneys

Joel J. Bellows, Esq.
Christopher L. Gallinari, Esq.
BELLOWS AND BELLOWS, P.C.
209 South LaSalle Street, Suite 800
Chicago, Illinois 60604
(312) 332-3340
(312) 332-1190 (facsimile)
Attorney No.: 01000