CH

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROBERT LIEBLANG, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 07 C 4250 |
| v. ) | |
| ) | Judge John W. Darrah |
| CROWN MEDIA HOLDINGS, INC. ) | |
| and WILLIAM J. ALIBER, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Robert Lieblang, brings suit against Defendants, Crown Media Holdings, Inc. ("Crown") and William J. Aliber, Crown's Executive Vice-President and Chief Financial Officer, alleging violation of Section 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b), as implemented by Rule 10b-5 of the Security and Exchange Commission, 17 C.F.R. § 240.10b-5, violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2 and common-law fraud. Defendants have moved to dismiss the Complaint.

### BACKGROUND

In mid-August 2005, Crown announced that it would be placing itself up for sale in an auction to be held in 2006. In response to this announcement, Plaintiff began purchasing shares of Crown on or about August 31, 2005. In early December 2005, Plaintiff listened to a Crown public conference call, during which Aliber stated that the auction process was proceeding satisfactorily.

On or about December 14, 2005, Plaintiff read a Wall Street Journal article on the Crown auction. The article stated that News Corp. had submitted an indication of interest in bidding for Crown but at a price far below what Crown's Board was seeking. The article also stated that two other prospective bidders, Viacom and Time Warner, Inc., were unlikely to pursue a purchase of Crown. Perceiving a conflict between the Wall Street Journal article and Aliber's statements during the conference call, Plaintiff telephoned Crown to inquire if the article was accurate. A Crown investor relations representative told Plaintiff that the auction was continuing to proceed smoothly.

From time to time thereafter, Plaintiff telephoned Crown, seeking additional information on the status of the auction. Plaintiff also sought to speak directly with Aliber. On March 9, 2006, Plaintiff succeeded in reaching Aliber. Plaintiff informed Aliber that he held a large position in Crown stock and asked Aliber whether the Wall Street Journal article from December 2005 was accurate. Aliber stated that he was familiar with the article and that it was not accurate. Aliber said words to the effect that, "Those reporters don't know anything. Not only are News Corp., Viacom and Time Warner still interested, but we have two hedge funds interested."

One week later, on March 16, 2006, Robert Routh, a stock analyst for Jeffries, downgraded Crown stock from "Buy" to "Hold." Routh stated that his action was due to Crown's delay in releasing its earnings and filing its Form 10-K Report and also because there were no buyers for the company. Plaintiff called Routh, who told him that News Corp., Time Warner and Viacom had pulled out of bidding for Crown. Plaintiff called Aliber to inquire whether Routh's statements were correct. Aliber told Plaintiff that Routh was incorrect and that

2

two of the three bidders mentioned by Routh were still in the auction process. Aliber also told Plaintiff that Crown's delay in releasing its earnings and filing its 10-K had been caused by a minor accounting error and that Crown's auditor needed five bank letters regarding a Crown debt before Crown could move forward with its earnings report and 10-K.

Over the next few weeks, Plaintiff had several more conversations with Aliber. On March 20, 2006, Aliber told Plaintiff that Crown was working to obtain the bank signatures needed for the 10-K. On March 21, Aliber told Plaintiff that Crown might release its earnings report and file its 10-K on March 24 if it obtained the bank signatures in time. On March 22, Aliber told Plaintiff that Crown needed one more bank signature before it could release its earnings report and file its 10-K. Aliber urged Plaintiff to "hang in there" and not sell his stock.

On March 23, Aliber told Plaintiff that Crown's Board might accept a lower price because the stock price had dropped and that there were still interested buyers, including News Corp., Viacom and Time Warner. Aliber again urged Plaintiff to "hang in there" and not sell his stock. On March 29, Crown released its earnings report and filed its 10-K.

On April 4, 2006, Plaintiff spoke with Aliber to ask about the status of the auction process. Aliber told Plaintiff that one of two things would happen. Either Crown would sell itself to one of the interested buyers, which included News Corp., Viacom and Time Warner; or it would sell its film library to a hedge fund and enter into a partnership with News Corp., Viacom or Time Warner. Aliber stated his belief that in either scenario, the stock price would go up. Aliber again urged Plaintiff not to sell his stock.

On April 6, Plaintiff again spoke with Aliber to inquire about the status of the auction. Aliber stated that the auction process continued to go well and that Crown's Board was scheduled to meet on April 13, 2006, at which time the Board would pick one of the options discussed during the April 4 conversation between Plaintiff and Aliber. On April 12, Plaintiff again called Aliber, who told him that the Board would probably make its announcement on April 17.

On April 17, 2006, Crown announced that it was terminating the auction because it was unable to locate a buyer. The announcement caused the share price to decline. When Plaintiff learned of the announcement, he spoke with Aliber to ask what happened. Aliber was very apologetic and told Plaintiff that the Board had not had any interested buyers for the company.

Upon information and belief, Plaintiff alleges that Aliber was forced to resign his position with Crown in September 2006, at least in part because of his allegedly false and misleading communications with Plaintiff about the auction process. Plaintiff asserts that Aliber either knew his statements to Plaintiff were false or was reckless in failing to ascertain the truth of those statements. Plaintiff asserts that Aliber knew that Plaintiff was maintaining a large position in Crown stock and that Aliber urged Plaintiff to keep his Crown stock so that Plaintiff would not cause the price to decline by selling his shares.

Plaintiff purchased shares of Crown stock in his individual account between August 31, 2005 and April 13, 2006. By April 18, 2006, Plaintiff had been forced to sell all of those shares to meet margin calls. Plaintiff also purchased shares of Crown stock in his IRA account. Plaintiff sold these shares on August 24, 2006. Plaintiff suffered a loss on both investments.

## LEGAL STANDARD

Under Rule 9(b) of the Federal Rules of Civil Procedure, when alleging fraud, a Plaintiff must state with particularity the circumstances constituting that fraud. Fed. R. Civ. P. 9(b). Furthermore, the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u–4, imposes an even more "exacting pleading requirement" for claims alleging violations of § 10(b). *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S.Ct. 2499, 2504 (2007) (*Tellabs*). The PSLRA requires that "the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding that statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed. 15 U.S.C. § 78u–4(b)(1). The plaintiff must also "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u–4(b)(2). A complaint not meeting these two requirements must be dismissed. 15 U.S.C. § 78u–4(b)(3).

In ruling on a 12(b)(6) motion to dismiss a § 10(b) claim, a court must accept all factual allegations in the complaint as true. *Tellabs*, 127 S.Ct. at 2509. A court must consider the complaint in its entirety, as well as documents incorporated into the complaint by reference. *Tellabs*, 127 S.Ct. at 2509.

## ANALYSIS

*Plaintiff's Claim Under § 10(b)*

To prevail on a claim under § 10(b) of the Securities and Exchange Act and Rule 10b-5, a plaintiff must prove "(1) the defendant made a false statement or omission (2) of material fact (3) with scienter (4) in connection with the purchase or sale of securities (5) upon which the

5

plaintiff justifiably relied and (6) that the false statement proximately caused the plaintiff damages. *See Makor Issues & Rights, Ltd. v. Tellabs, Inc.*, 437 F.3d 588, 595 (7th Cir. 2006), *vacated and remanded on other grounds*, 127 S.Ct. 2499 (2007).

Defendants first argue that the statements Plaintiff alleges to be false are not statements of material fact, as required for liability under § 10(b). To qualify as a statement of material fact, the statement must be one that a reasonable investor would reasonably consider in deciding whether to buy, sell or hold a stock. *See Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997) (*Eisenstadt*). Defendants argue that Aliber's statements to Plaintiff were not facts but ,rather, sales "puffery," optimistic rhetoric, conjecture and vague statements of opinion, and are, therefore, not actionable under § 10(b). *See Eisenstadt*, 113 F.3d at 746 ("mere sales puffery is not actionable"); *In re Midway Games, Inc. Securities Litigation*, 332 F.Supp.2d 1152, 1164 (N.D.Ill. 2004) ("loosely optimistic statements that are so vague, so lacking in specificity, or so clearly constituting the opinion of the speaker that no reasonable investor could find them important to the total mix of information available" are immaterial as a mater of law) (quoting *Shaw v. Digital Equipment Corp., et al.*, 82 F.3d 1194, 1217 (1st Cir. 1996)); *Eckstein v. Balcor Film Investors, et al.*, 8 F.3d 1121, 1132 (7th Cir. 1993) (intentions and beliefs are facts for the purposes of § 10(b) only when they are open to "objective verification").

On April 4 and 6, 2006, Aliber told Plaintiff that Crown would either sell itself to one of the potential buyers or would sell its library to a hedge fund and enter into a partnership with one of the potential buyers. This is the type of information, especially when coming from a company's Chief Financial Officer, that a reasonable investor would reasonably consider in deciding whether to buy, sell or hold a stock.

Defendants argue that Aliber's alleged statement was merely puffery and, therefore, was not material. Defendants rely on *In re Agribiotech Securities Litigation*, 2000 WL 1277603 (D.Nev, 2000) (*Agribiotech*), a District Court case from the District of Nevada. In *Agribiotech*, a corporate officer of a company was reported as predicting that "a large chemical company might pay 'at least $30 a share and perhaps as much as $70 for his company.'" The court reasoned that "[v]ague or 'soft' expressions of optimism are not actionable under the securities laws, since they are considered to be immaterial and a form of puffery by the market." *Agribiotech*, 2000 WL 1277603 at *7. The court also relied on the Seventh Circuit decision in *Eisenstadt* for the proposition that salesmanship and puffery was not actionable. *Agribiotech*, 2000 WL 1277603 at *8. However, *Eisenstadt* dealt with "nonspecific representations" and "*general* expressions of satisfaction." *Eisenstadt* 113 F.3d at 746 (emphasis original). Aliber did not merely say that the auction was going well but gave two specific outcomes and claimed that one of them would occur. This is more definite than speculating what a company "might pay." Thus, despite Defendants' argument that Aliber's predictions amounted to puffery and salesmanship, the statements were material, for purposes of this motion.

Additionally, Aliber's statements concerning whether specific bidders were "still interested" or "still in the auction process" are certainly factual. While there may be shades of gray when speaking of a potential bidder's interest or involvement in an auction, these statements are more definite and concrete than general assurances that the auction is proceeding smoothly. If at the time of Aliber's statement, the specified bidders had shown no interest in the auction and were not participating, Aliber's statements to the contrary would be objectively and verifiably false. Therefore, statements regarding which bidders were interested and participating in the

7

auction are factual statements for the purposes of § 10(b). These statement are also material because the level of interest in Crown's auction would be relevant information to a reasonable investor in deciding whether to buy or sell Crown stock.

Defendants next argue that Plaintiff has not pled with the required specificity why Aliber's statements were false. The PSLRA requires that a plaintiff "specify each statement alleged to have been misleading, [and] the reason or reasons why the statement is misleading." 15 U.S.C. § 78u-4(b)(1)(B); *See also Tellabs*, 127 S.Ct. at 2504. Plaintiff cannot simply rest on his allegations that Aliber's statements were false. Rather, he must give reasons for those assertions.

However, Plaintiff does provide reasons for why he believes Aliber's statements concerning which potential buyers were still interested and involved in the auction were false. The Wall Street Journal article from December 14, 2005 stated that two potential buyers, Viacom and Time Warner, were unlikely to attempt to purchase Crown. On March 16, 2006, Plaintiff was told by Jeffries stock analyst Robert Routh that News Corp., Time Warner and Viacom had pulled out of the bidding for Crown. These statements, from sources which were potentially in position to be knowledgeable on such matters, cast doubt on the veracity of Aliber's statements on March 9, 16 and 23, 2006, which directly contradict the reports of the Wall Street Journal and Routh. These allegations satisfy Plaintiff's pleading requirements under the PSLRA of providing reasons for believing that Aliber's statements were false. Additionally, Aliber's statements on April 17, 2006, after Crown announced that it would not be selling itself, that Crown had not had any interested buyers, while ambiguous as to the time-frame of the lack of interest, also casts some doubt on the truthfulness of his previous statements.

The next hurdle that Plaintiff must overcome in successfully alleging a claim under § 10(b) is showing the required scienter. Liability under § 10(b) and Rule 10b-5 requires proof that the defendant had "a mental state embracing intent to deceive, manipulate, or defraud." *Tellabs*, 127 S.Ct. at 2507 (citing *Ernst & Ernst v. Hechfelder*, 425 U.S. 185, 194 (1976). The PSLRA requires a plaintiff to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). The Supreme Court recently held that to meet the burden of showing a "strong inference," a plaintiff must show that the "inference of scienter must be more than merely plausible or reasonable-it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs*, 127 S.Ct. at 2504-05. "[A] court must consider plausible nonculpable explanations for the defendant's conduct" but "the inference that the defendant acted with scienter need not be irrefutable, *i.e.*, of the 'smoking-gun' genre." *Tellabs*, 127 S.Ct. at 2510.

Here, Plaintiff has alleged specific facts that sufficiently raise the inference of the required scienter. Plaintiff has two sources, the Wall Street Journal Article and his conversation with Routh, that directly contradict Aliber's statements regarding which potential purchasers were still interested and still involved in the Crown auction. Routh's statements to Plaintiff are especially relevant to the issue of scienter because they were made on the same day that Aliber told Plaintiff that two of the three potential buyers that Routh claimed had dropped out were still in the auction process. On that date, either Aliber or Routh was incorrect in stating which companies were involved in the auction process. Thus, Routh's statements create an inference

9

that Aliber's statements to Plaintiff were incorrect. This inference is strengthened by the ultimate outcome of the auction, in which Crown ended up with no interested bidders.[1]

The nonculpable, plausible explanation that must be considered at this stage is that Aliber was being truthful about the participation and interest by potential buyers and that the Wall Street Journal and Routh simply had it wrong. While this is certainly a possibility, this explanation cannot be said to be more compelling than Plaintiff's theory that he was misled by Aliber, given the eventual failure of the auction and the consistency between Routh and the Wall Street journal. Thus, Plaintiff has met his burden of sufficiently alleging scienter.

Defendants next argue that Plaintiff's § 10(b) claim fails because the facts alleged and the documents incorporated by reference establish that Plaintiff did not justifiably rely on any false statement of material fact. Defendants argue that their written and oral warnings of the risk that the auction might not result in a sale mean that Plaintiff could not have justifiably relied on Aliber's oral statements. *See Teamsters Local 282 Pension Fund v. Angelos*, 762 F.2d 522, 530 (7th Cir. 1985) ("The investor cannot ask a court to focus on the lie and ignore the remaining pieces of information already available to him . . ."). This argument fails, however, because Defendants' written and oral warnings do not contradict Aliber's statements regarding the

---

[1]This is not a case of "fraud by hindsight" as Defendants argue. In such cases, a defendant is not liable for statements, for example, optimistic statements about expectations for the company, when the company then fails to achieve those results. A failure to meet goals does not raise the inference of fraud when those goals are not met. *Eisenstadt*, 113 F.3d at 746 ("Hindsight is not the test for securities fraud"). In this case, however, the alleged false statements concerned not future events but, rather, the conditions that existed at that time. Aliber made statements regarding which companies were, at that time, involved in and interested in the auction. The truth of those statements did not depend on any future outcome. However, that the end result of the auction was that Crown did not find an interested bidder, strengthens the inference that it was Routh and not Aliber that was correct about the level of interest and participation one month earlier.

10

interest and participation of potential buyers. The statements at issue here are not Aliber's assurances that a sale would eventually occur, which were contradicted by Crown's warnings but, rather, Aliber's specific updates to Plaintiff regarding interest and participation in the auction at that time. A reasonable investor, even though aware of the risk that no sale would occur, could reasonably rely on specific information regarding the level of interest in the auction in determining the chances that a sale would or would not take place. Defendants have not shown that any of their written statements contradicted the specific information that Aliber provided Plaintiff. Thus, Plaintiff has sufficiently alleged reasonable reliance.

Defendants further argue that Plaintiff has not pled "loss causation," i.e., "a causal connection between the material misrepresentation and the loss. *See Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 343 (2005). The loss causation requirement has been described by the Seventh Circuit as a "practical requirement" that "ought not place unrealistic burdens on the plaintiff at the initial pleading stage." *Caremark, Inc. v. Coram Healthcare Corp.*, 113 F.3d 645, 649 (7th Cir. 1997) (*Caremark*). To satisfy his burden, Plaintiff "must allege that [he] was in fact injured by the misstatement or omission of which [he] complains. *Caremark*, 113 F.3d at 649. Here, Plaintiff has alleged that he purchased shares of Crown stock in reliance on Defendants' statements and that Plaintiff suffered a loss on his purchase of those shares. This is sufficient to satisfy the loss causation requirement.

Finally, Defendants argue that Plaintiff lacks standing to sue on his purchases of Crown stock made before any allegedly false statements by Defendants. *See Roots Partnership v. Lands' End, Inc.*, 965 F.2d 1411, 1420 (7th Cir. 1992) (post-purchase statements cannot form the basis of Rule 10b-5 liability). Plaintiff has conceded that his § 10(b) claim is limited to

11

purchases of Crown stock made after Aliber's false statements. Thus, purchases made before Aliber's allegedly false statements shall be excluded from Plaintiff's § 10(b) claim.

*State Law Claims*

The elements of a claim under the Illinois Consumer Fraud Act, 815 ILCS 505/2, are: (1) a deceptive act or practice by defendant; (2) defendant's intent that plaintiff rely on the deception; and (3) that the deception occurred in the course of conduct involving trade and commerce. *Connick v. Suzuki Motor Co., Ltd.*, 174 Ill.2d 482, 501 (Ill. 1996) (*Connick*). Plaintiff's reliance is not an element of statutory consumer fraud, but a valid claim must show that the consumer fraud proximately caused plaintiff's injury. *Connick*, 174 Ill.2d at 501.

Defendants rely on their arguments against the § 10(b) claim to attack Plaintiff's claim under the Illinois Consumer Fraud Act. They argue that Plaintiff has not pled his state-law claims with the required particularity and that Aliber's alleged statements to Plaintiff were not material. As discussed above, Plaintiff has pled his case with sufficient particularity and has shown that certain of Aliber's statements were material.

The elements of a claim for common-law fraud under Illinois law are: (1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from his reliance on the statement. *Connick*, 174 Ill.2d at 496. Defendants argue that Plaintiff has not pled facts sufficient to show that his reliance on the allegedly false statements was justified. However, as discussed above, a reasonable investor in Plaintiff's position would have found statements regarding which bidders

were participating in the auction, coming from an officer of Crown such as Aliber, to be material. Thus, Plaintiff was justified in relying on the truthfulness of Aliber's statements.

## CONCLUSION

For the forgoing reasons, Defendants' motion to dismiss is denied.

Dated: January 31, 2008

JOHN W. DARRAH
United States District Court Judge